UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY HAYWOOD,                                        Case No. 07-15002

              Plaintiff,                          Julian Abele Cook
v.                                                   United States District Judge

COMMISSIONER OF                                      Michael Hluchaniuk
SOCIAL SECURITY,                                     United States Magistrate Judge

              Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 10)**

## I.      PROCEDURAL HISTORY

      A.      Proceedings in this Court

On November 26, 2007, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Julian Abele Cook referred this matter to Magistrate Judge Virginia M. Morgan

for the purpose of reviewing the Commissioner's decision denying plaintiff's

claim for a period of disability insurance benefits.  (Dkt. 2).  This matter was

reassigned to the undersigned on January 14, 2008.  (Dkt. 3).  This matter is

currently before the Court on cross-motions for summary judgment.  (Dkt. 9,10).

B.    Administrative Proceedings

Plaintiff filed the instant claims on August 27, 2002, alleging that she became unable to work on December 16, 1996.  (Tr. at 27).  The claim was initially disapproved by the Commissioner and plaintiff requested a hearing.  (Tr. at 339).  On November 15, 2005, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Bennett S. Engelman, who considered the case *de novo*.  In a decision by the Appeals Council dated December 22, 2005, the ALJ found that plaintiff was not disabled.  (Tr. at 23-37).  Plaintiff requested a review of this decision on March 13, 2003.  (Tr. at 339).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC- 1, Tr. at 13), the Appeals Council, on September 24, 2007,  denied plaintiff's request for review.  (Tr. at 10-12); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

-------

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   STATEMENT OF FACTS

### A.   ALJ Findings

There was a prior claim filed on November 3,1997 and a decision by another administrative law judge, dated June 24, 1999. (Tr. at 26). That decision was appealed to the Appeals Council and affirmed on July 10, 2002 and by the federal district court on October 25, 2002. (Tr. at 26; *see also* Case No. 02-73334, Dkt. 19, 20). At the November 2005 administrative hearing, plaintiff amended her onset date to July 27, 2000, the date of her 50th birthday. (Tr. at 367, 533).

 Plaintiff was 55 years of age at the time of the most recent administrative hearing. (Tr. at 509). Plaintiff's relevant work history included approximately 20 years as a production worker. (Tr. at 97). In denying plaintiff's claims, defendant Commissioner considered a herniated cervical disc, bilateral epicondylitis, lower back pain, left rotator cuff strain, and depression and anxiety, as possible bases of disability. (Tr. at 35).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since December 16, 1996.  (Tr. at 35).  At step two, the ALJ found that plaintiff's impairments were "severe" within the meaning of the second sequential step.  *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id*.  At step four, the ALJ found that plaintiff could not perform her previous work as a machine operator and assembler.  (Tr. at 36).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Tr. at 37).

The ALJ also noted that plaintiff's current application and evidence is little different that the earlier decision, which was affirmed by the federal district court. (Tr. at 35).  The ALJ further noted that while plaintiff reached 50 years of age after the first decision, in order to grant plaintiff's application, he would have to reach a different conclusion than the federal court, based on almost identical evidence.  *Id*.

B.    <u>Administrative Record</u>

1.    Plaintiff's testimony and statements

Plaintiff testified that she and her husband spend about four to five months

of the year in Florida and have been doing so since 2000.  (Tr. at 523).  Plaintiff

testified regarding the course of her treatment with Dr. Schriner:

> Q ... around the early part of 1999 ... you had just started
> treatment at that time with Dr. Shriner [phonetic] for
> your back and your left leg pain. Do you remember that?
> A Yes...
>                          * * *
> Q ... at the last hearing, he testified that you could stand
> or walk for roughly anywhere from 30 minutes to an
> hour. Between that time and, let's say the end of 2002,
> did your ability to stand or walk stay the same, get
> worse, get better?
> A I don't think it got better. No, I'd say it got worse.

(Tr. at 525).  Plaintiff also testified that in 2002, she could stand for 30-60 minutes

before having to sit.  (Tr. at 525-526).  She said she feels better when lying flat.

(Tr. at 526).  Plaintiff testified that even lifting five pounds bothers her arms and

hands, and this had been the case for at least three years.  (Tr. at 526).  Plaintiff

also testified that her depression was "better" than it was three years ago.

2.    Medical Evidence

Plaintiff's treating physician, Dr. Schriner, wrote that he has treated plaintiff

since October 1, 1998.  On October 24, 2005, Dr. Schriner wrote that, during the

period of time "while she was working for General Motors, [plaintiff] has gradually and progressively become more and more disabled." (Tr. at 472). He also wrote that plaintiff "has degenerative Osteoarthritis of the lumbar spine, cervical spine and also her left thumb, which have required injections." (Tr. at 472). Further, according to Dr. Schriner, plaintiff "has been in physical therapy, and at this time it is my belief that she is totally disabled from physical, manual labor work." (Tr. at 472). Dr. Schriner also completed a Medical Source Statement dated October 12, 2005, indicating that plaintiff required restrictions for her degenerative arthritis [in her] hands, back, neck, which would limit her to a reduced range of sedentary work and that these restrictions have existed since her 50th birthday. (Tr. at 473). Dr. Schriner indicated that, in his view, plaintiff could occasionally lift/carry 10 pounds, frequently carry less than 10 pounds, stand/walk at least two hours in an eight-hour day, and sit six hours in an eight hour day; that she had moderate limitations in using her extremities, severe limitations in pushing and pulling with the upper extremities, and moderate limitations in pushing and pulling with the left lower extremity. (Tr. at 473). Dr. Schriner also indicated that since July 2000, plaintiff could undertake sustained activity up to two hours at any level. (Tr. at 473).

Plaintiff's July 27, 1999 bone scan revealed possible mild bursitis and increased activity that might be related to arthritis.  (Tr. at 391).  Plaintiff underwent a bone scan of the femurs on September 6, 2001, which was compared with the total body bone scan from 1999 and the results showed no abnormal activity.  (Tr. at 440).  On March 16, 2000, plaintiff reported that her left leg felt much better and she did not want a "shot."  (Tr. at 435).  On March 21, 2000, plaintiff reported that her leg was "much better" but she was still using ice.  (Tr. at 434).  Plaintiff had three physical therapy treatments from September 25, 2001 to October 4, 2001 and she was discharged on October 18, 2001.  (Tr. at 398).  Plaintiff was noncompliant with therapy and had to discontinue therapy because she was leaving for Florida.  (Tr. at 398).  On November 1, 2001, plaintiff stated that her right leg was better, and that physical therapy was helping.  (Tr. at 422).  There do not appear to be any MRIs or other testing performed on her spine since April 17, 1997, at which time the MRI showed a "small central disc herniation at the C6-7 intervertebral disc level with minimal ventral extradural compression upon the thecal sac" and a "small left paracentral disc herniation" at the "C-5-6 level with minimal ventral extradural compression upon the thecal sac."  (Tr. at 227).

Report and Recommendation
Cross-Motions for Summary Judgment
*Haywood v. Comm'r*; No. 07-15002

Plaintiff treated with Dr. A. el-Mohammed, a psychologist, from August 1999, through October 2002. (Tr. at 404-19). Plaintiff did not see her psychologist from October 2000 to May 2001 (approximately six months), and from October 2001 to June 2002 (approximately seven months) because she spent those months in Florida. (Tr. at 407, 411-12). There is no suggestion in the record that plaintiff treated with another therapist while in Florida. In October 2002, plaintiff told her psychologist she was again going to Florida. (Tr. at 404).

During treatment, Dr. el-Mohammed found plaintiff's mood and affect to be depressed, anxious and angry, but in July 2000, plaintiff was only slightly depressed and anxious. (Tr. at 404-19). During treatment, Dr. el-Mohammed also found that plaintiff was open and cooperative, and she had no suicidal or homicidal ideation. (Tr. at 404-19). In October 2000, June 2001, and August 2001, plaintiff stated she was doing fairly well, was doing better, and was not feeling as bad. (Tr. at 409-10, 412). At the 2005 hearing in this case, plaintiff testified that she was "better" than she was three years earlier. (Tr. at 521).

### 3. Vocational expert

At plaintiff's first hearing, the vocational expert (VE) testified that plaintiff's prior work as a machine operator was sedentary and unskilled and that her prior work as an assembler was light to medium and unskilled. (Tr. at 500-

502).  The VE who testified at the November 2005 hearing agreed with this

assessment.  (Tr. at 34, 528-534).

The ALJ found plaintiff's RFC to be as follows:

> Based on the evidence of record the undersigned finds
> the claimant retains the residual functional capacity to
> perform a restricted range of light and unskilled work.
> She is able to perform work that involves occasionally
> lifting of up to 20 pounds with more frequent lifting of
> up to ten pounds with no prolonged walking, standing or
> lifting, no use of air or vibrating tools, no over head
> work, no production line work and performing only
> simple repetitive tasks in a low stress work environment.

(Tr. at 34).  The ALJ asked the VE to assume a hypothetical worker of the

claimant's age, education, prior work experience and described residual functional

capacity. (Tr. at 35, 528-533).  The VE testified that given the described

hypothetical worker that there existed a sufficient number of jobs that the

hypothetical worker could perform which exist in the national and regional

economy.  (Tr. at 35, 528-533).

B.    Parties' Arguments

1.    Plaintiff's claims of error.

Plaintiff argues that the ALJ failed to give appropriate weight to the

opinions of plaintiff's treating physician and thus posed an inappropriate

hypothetical to the VE.  According to plaintiff, the ALJ made a blanket statement

Report and Recommendation
Cross-Motions for Summary Judgment
*Haywood v. Comm'r*; No. 07-15002

that the Medical Source Statement was inconsistent with the letter and inappropriately "gave more weight" to the letter. (Dkt. 9, citing, Tr. at 32). Further, plaintiff argues that because each element of the hypothetical does not accurately describe plaintiff in all significant, relevant respects, the vocational expert's testimony should not constitute substantial evidence. (Dkt. 9).

> 2.    Defendant's counter-motion

The Commissioner argues that the ALJ properly weighed Dr. Schriner's opinions and he reasonably determined that through December 31, 2002, plaintiff could do a range of light work. (Dkt. 10, citing, Tr. at 32-37). On October 24, 2005, Dr. Schriner stated that "at this time it is my belief that she is totally disabled from physical, manual labor work," and that at plaintiff's age it would be "doubtful" she could be retrained into another occupation. (Tr. at 472). The Commissioner argues that Dr. Schriner's opinion is "merely speculative" about plaintiff's inability to do physical, manual labor work, and that it relates to plaintiff's condition in October 24, 2005, close to three years after plaintiff's date last insured. (Dkt. 10, citing, Tr. at 32, 355, 472). The Commissioner also argues that the ALJ reasonably gave no weight to Dr. Schriner's October 12, 2005 opinion that plaintiff could do less that sedentary work as of July 2000, because it was provided close to three years after plaintiff's date last insured, and it

represented Dr. Schriner's attempt to make his opinion relate back to the critical period of time.  (Dkt. 10, citing, Tr. at 32, 472).  Thus, according to the Commissioner, the ALJ, properly considered Dr. Schriner's opinions.

The Commissioner also argues that even if an ALJ does not give "good reasons" for rejecting the opinion of a treating source, remand and reversal may not be required if the violation has only been *de minimis*.  (Dkt. 10, citing, *Wilson, 378 F.3d at 547*; *Hall v. Comm'r of Soc. Sec.*, 148 Fed.Appx. 456, *462 (6th Cir. 2005)*.  For example, the court in Wilson found a *de minimus* violation where a treating source's opinion was so patently deficient that the Commissioner could not possibly credit it.  (Dkt. 10, citing, *Wilson, 378 F.3d at 547*).  Here, the Commissioner argues that such circumstances are present (1) because Dr. Schriner provided his opinions in October 2005, close to three years after plaintiff's date last insured of December 31, 2002; and (2) there is no medical evidence in the record that relates to that time that would support such an opinion.  (Dkt. 10).  The Commissioner argues that Dr. Schriner's opinion is completely at odds with plaintiff's lack of treatment, a negative diagnostic test, plaintiff's admissions, and plaintiff's residing in Florida.  (Dkt. 10).  Thus, according to the Commissioner, because Dr. Schriner's opinion is patently deficient, the ALJ's not discussing that opinion in detail is harmless error.  (Dkt. 10).

Report and Recommendation
Cross-Motions for Summary Judgment
*Haywood v. Comm'r*; No. 07-15002

The Commissioner also argues that, contrary to plaintiff's assertion, the ALJ explained why he found mild deficiencies of concentration, persistence, or pace. (Dkt. 10, citing, Tr. at 33). First, the ALJ considered plaintiff's testimony at the November 2005 hearing where plaintiff did not demonstrate any chronic difficulties with recall, persistence, or concentration and never complained of such at the hearing. (Dkt. 10, citing, Tr. at 33, 505-35). In addition, plaintiff submitted evidence that she did not see her psychologist from October 2000 to May 2001, from October 2001 to June 2002, and after October 2002, because she spent that time in Florida. (Dkt. 10, citing, Tr. at 404, 407, 411-12). In addition, plaintiff's therapy records show improvement during this time. (Dkt. 10, citing, Tr. at 404-19). The Commissioner argues, therefore, that based on the critical evidence of record, the ALJ reasonably found plaintiff only had mild deficiencies with respect to concentration, persistence, or pace.

Finally, the Commissioner argues that, contrary to plaintiff's assertion, the hypothetical question the ALJ asked the VE, and the corresponding answer the ALJ relied on, were adequate and proper because it included all plaintiff's substantiated impairments and resultant limitations. (Dkt. 10). The ALJ reasonably determined that because of her impairments, plaintiff could do a range of light work prior to December 31, 2002. In his hypothetical question to the VE,

the ALJ did not ask the VE to take into consideration any additional limitations because the evidence did not support more restrictions. When the ALJ incorporated plaintiff's substantiated limitations into his hypothetical question, the VE testified that a person like plaintiff could perform more than 11,000 jobs in the lower peninsula of Michigan as a teacher's aide, information clerk, and cashier. (Tr. at 529-31). Thus, substantial evidence supports the ALJ's determination that, before December 31, 2002, there were a significant number of jobs that plaintiff could perform.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an

action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

Report and Recommendation
Cross-Motions for Summary Judgment
*Haywood v. Comm'r*; No. 07-15002

claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

> 2.    Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

      C.    <u>Analysis and Conclusions</u>

      The ALJ determined that plaintiff possessed the residual functional capacity

to return to a limited range of light unskilled work.  (Tr. at 27).[2]  "Light work" is

defined as:

> Light work involves lifting no more than 20 pounds at a
> time with frequent lifting or carrying of objects weighing
> up to 10 pounds.  Even though the weight lifted may be
> very little, a job is in this category when it requires a
> good deal of walking or standing, or when it involves
> sitting most of the time with some pushing and pulling of
> arm or leg controls. To be considered capable of
> performing a full or wide range of light work, you must
> have the ability to do substantially all of these activities.
> If someone can do light work, we determine that he or
> she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity
> or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

      After review of the record, I conclude that the ALJ utilized the proper legal

standard in his application of the Commissioner's five-step disability analysis to

---

   [2]  At the time of the second determination, plaintiff was between 50 and 54 years, which is considered by the Social Security Regulations as a "person approaching advanced age."  20 C.F.R. § 404.1563(c).  If plaintiff had been determined to have a RFC limited to sedentary work, she would have been entitled to disability benefits under the Commissioner's regulations because of the combination of her age classification and RFC.  *See e.g. Drummond*, *supra*.

plaintiff's claim.  As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

      1.    *Res Judicata*

Generally, principles of *res judicata* require that the administration be bound by this decision unless a change of circumstances is proved on a subsequent application.  *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997).  Acquiescence Ruling 98-4(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding... ."  The Sixth Circuit applies collateral estoppel to "preclude reconsideration by a subsequent ALJ of factual findings that have already been decided by a prior ALJ when there are no changed circumstances requiring review."  *Brewster v. Barnhart*, 145 Fed.Appx. 542, 546 (6th Cir. 2005).

Under *Drummond*, a change in the period of disability alleged does not preclude the application of *res judicata*. *Slick v. Comm'r of Soc. Sec.*, 2009 WL 136890, \*4, citing, *Drummond*, 126 F.3d at 839. The change in the alleged disability period does not affect the application of *res judicata* where the issue (whether plaintiff's condition disables her and/or to what degree), is the same. *Slick*, at \*4. Plaintiff must show that circumstances have changed since the first hearing before the ALJ "by presenting new and material evidence of deterioration." *Id*. at \*5.

A key question in this case is the severity of any of plaintiff's impairments before the expiration of her insured status. A social security disability claimant bears the ultimate burden of proof on the issue of disability. *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) (citation omitted). The claimant's specific burden is to prove that he was disabled on or before the last date on which he met the special earnings requirement of the Act. *Id.* (citation omitted); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Post-insured status evidence of a claimant's condition is generally not relevant. *Bagby v. Harris*, 650 F.2d 836 (6th Cir. 1981); see also *Bogle v. Sec'y of Health and Hum. Serv.*, 998 F.2d 342 (6th Cir. 1993). However, such evidence will be considered if it establishes that an impairment existed continuously and in the same degree from the date the insured

status expired.  *Johnson v. Sec'y of Health and Hum. Serv.*, 679 F.2d 605 (6th Cir. 1982).  Plaintiff's insured status expired on December 31, 2002.  Therefore, she must establish that she became disabled on or before that date.

In the 1999 decision, the ALJ found that plaintiff had the following RFC:

> Based on the evidence of record the undersigned finds
> the claimant retains the residual functional capacity to
> perform a restricted range of light and unskilled work.
> She is able to perform work that involves occasionally
> lifting of up to 20 pounds with more frequent lifting of
> up to ten pounds with no prolonged walking, standing or
> lifting, no use of air or vibrating tools, no over head
> work, no production line work and performing only
> simple repetitive tasks in a low stress work environment.

(Tr. at 55).  In plaintiff's previous appeal to this Court, she did not challenge the ALJ's findings regarding her physical impairments.  (Case No. 02-73334, Dkt. 19, p. 7 (Report and Recommendation)).[3]  Rather, plaintiff argued that the RFC did not adequately reflect her stress level and the resulting impact on the deficiencies in concentration, persistence, and pace.  *Id.*  The magistrate judge who evaluated plaintiff's appeal concluded that the ALJ properly incorporated plaintiff's mental impairments and the impact on concentration, persistence, and pace.  *Id.* at 7-10. The magistrate judge concluded that the medical evidence and agency evaluations

---

[3]  The Report and Recommendation was adopted as the judgment of the District Court on February 26, 2004 and judgment entered in favor of defendant and against plaintiff on that same date.  (Case No. 02-73334, Dkt. 20, 21)

were "embodied in the RFC for low stress, simple work" and that plaintiff's

inability to handle work involving complex decisions or remember complicated

instructions were adequately represented in the RFC.  *Id*. at 10.

### 2.    New medical evidence

In weighing the opinions and medical evidence, the ALJ must consider

relevant factors such as the length, nature and extent of the treating relationship,

the frequency of examination, the medical specialty of the treating physician, the

opinion's evidentiary support, and its consistency with the record as a whole.  20

C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source

is entitled to more weight than a non-examining source and a treating physician's

opinion is entitled to more weight than a consultative physician who only

examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision

denying benefits "must contain specific reasons for the weight given to the

treating source's medical opinion, supported by the evidence in the case record,

and must be sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's opinion and the reasons for

that weight."  Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).

The opinion of a treating physician should be given controlling weight if it

is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques" and is not "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). While the uncontradicted opinions of treating physicians and psychologists are entitled controlling weight, *Jones v. Sec'y of Health and Hum. Serv.*, 945 F.2d 1365, 1370 (6th Cir. 1991), here, the presence of contradictory evidence allowed the ALJ to accord less than controlling weight to the opinions of plaintiff's treating physician and psychologist. *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 391 (6th Cir. 2004).

Specifically, plaintiff's treating physician, Dr. Schriner, wrote that he has treated plaintiff since October 1, 1998. On October 24, 2005 Dr. Schriner wrote that, during the period of time "while she was working for General Motors, [plaintiff] has gradually and progressively become more and more disabled." (Tr. at 472). He also wrote that plaintiff "has degenerative Osteoarthritis of the lumbar spine, cervical spine and also her left thumb, which have required injections." (Tr. at 472). Further, according to Dr. Schriner, plaintiff "has been in physical therapy, and at this time it is my belief that she is totally disabled from physical, manual labor work." (Tr. at 472). Dr. Schriner also completed a Medical Source Statement dated October 12, 2005, indicating that plaintiff required restrictions for her degenerative arthritis [in her] hands, back, neck, which would limit her to a

reduced range of sedentary work and that these restrictions have existed since her 50th birthday.  (Tr. at 473).  Dr. Schriner indicated that, in his view, plaintiff could occasionally lift/carry 10 pounds, frequently carry less than 10 pounds, stand/walk at least two hours in an eight-hour day, and sit six hours in an eight hour day; that she had moderate limitations in using her extremities, severe limitations in pushing and pulling with the upper extremities, and moderate limitations in pushing and pulling with the left lower extremity.  (Tr. at 473).  Dr. Schriner also indicated that since July 2000, plaintiff could undertake sustained activity up to two hours at any level.  (Tr. at 473).

However, Dr. Schriner's opinions, created three years after the time period in question, are not supported by the other medical evidence in the record, which show no worsening of plaintiff's condition from the prior adjudicated period. Plaintiff's July 27, 1999 bone scan revealed possible mild bursitis and increased activity that might be related to arthritis.  (Tr. at 391).  Plaintiff underwent a bone scan of the femurs on September 6, 2001, which was compared with the total body bone scan from 1999 and the results showed no abnormal activity.  (Tr. at 440). Thus, there was no evidence from the bone scan that plaintiff's condition had worsened.  On March 16, 2000, plaintiff reported that her left leg felt much better and she did not want a "shot."  (Tr. at 435).  On March 21, 2000, plaintiff reported

Report and Recommendation
Cross-Motions for Summary Judgment
*Haywood v. Comm'r*; No. 07-15002

that her leg was "much better" but she was still using ice.  (Tr. at 434).  Plaintiff

had three physical therapy treatments from September 25, 2001 to October 4, 2001

and she was discharged on October 18, 2001.  (Tr. at 398).  Plaintiff was

noncompliant with therapy and had to discontinue therapy because she was

leaving for Florida.  (Tr. at 398).  On November 1, 2001, plaintiff stated that her

right leg was better, and that physical therapy was helping.  (Tr. at 422).  There do

not appear to be any MRIs or other testing performed on her spine since April 17,

1997, at which time the MRI showed a "small central disc herniation at the C6-7

intervertebral disc level with minimal ventral extradural compression upon the

thecal sac" and a "small left paracentral disc herniation" at the "C-5-6 level with

minimal ventral extradural compression upon the thecal sac."  (Tr. at 227).  The

ALJ reasonably gave Dr. Schriner's after-the-fact opinion little weight in light of

the prior RFC determination and the lack of any medical evidence showing that

plaintiff's condition or symptoms worsened.  Thus, the undersigned concludes that

substantial evidence supports the ALJ's findings regarding her physical

impairments and resulting limitations and that plaintiff has offered no evidence to

support a material change in her circumstances from the prior determination.

   Plaintiff has also failed to come forward with any evidence that her mental

impairments worsened during the time period in question.  In fact, the evidence

shows that plaintiff's mental impairments improved during this time frame.

Plaintiff treated with Dr. A. el-Mohammed, a psychologist, from August 1999,

through October 2002. (Tr. at 404-19). During treatment, Dr. el-Mohammed

found plaintiff's mood and affect to be depressed, anxious and angry, but in July

2000, plaintiff was only slightly depressed and anxious. (Tr. at 404-19). During

treatment, Dr. el-Mohammed also found that plaintiff was open and cooperative,

and she had no suicidal or homicidal ideation. (Tr. at 404-19). In October 2000,

June 2001, and August 2001, plaintiff stated she was doing fairly well, was doing

better, and was not feeling as bad. (Tr. at 409-10, 412). At the 2005 hearing in

this case, plaintiff testified that she was "better" than she was three years earlier.

(Tr. at 521).

In addition, plaintiff's failure to consistently seek psychological treatment

for nearly half of the years 2000, 2001, and 2002 weighs against any finding that

her condition worsened. The failure to seek treatment for a period of time may be

a factor to be considered against a claimant, *Hale v. Sec'y of Health and Hum.*

*Serv.*, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to

afford or obtain treatment to remedy her condition, *McKnight v. Sullivan*, 927 F.2d

241, 242 (6th Cir. 1990). Plaintiff did not see her psychologist from October 2000

to May 2001 (approximately six months), and from October 2001 to June 2002

(approximately seven months) because she spent those months in Florida.  (Tr. at 407, 411-12).  In October 2002, just a few months before plaintiff's last date insured, plaintiff told her psychologist she was again going to Florida for the winter.  (Tr. at 404).  There is no suggestion in the record that plaintiff treated with another therapist while in Florida or was unable to afford treatment.  Thus, the undersigned concludes that substantial evidence supports the ALJ's findings regarding her mental impairments and resulting limitations and that plaintiff has offered no evidence to support a material change in her circumstances from the prior determination.

### 3.    Hypothetical question

The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other."  *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004).  "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other

impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Not all impairments deemed "severe" in step two must be included in the hypothetical. *Griffeth*, 217 Fed.Appx. at 429. "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey*, 987 F.2d at 1235. This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Based on the foregoing, the ALJ reasonably determined that because of her impairments, plaintiff could still do a range of light work prior to December 31, 2002.  In his hypothetical question to the VE, the ALJ did not ask the VE to take into consideration any additional limitations because the evidence did not support any different or additional restrictions from those previously determined by the ALJ in the first determination.  When the ALJ incorporated plaintiff's substantiated limitations into his hypothetical question, the VE testified that a person like plaintiff could perform more than 11,000 jobs in the lower peninsula of Michigan as a teacher's aide, information clerk, and cashier.  (Tr. at 529-31). Thus, substantial evidence supports the ALJ's determination that, before December 31, 2002, there were a significant number of jobs that plaintiff could perform.

### 4.    Conclusion

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response must not exceed 20 pages in

Report and Recommendation
Cross-Motions for Summary Judgment
*Haywood v. Comm'r*; No. 07-15002

length unless such page limit is extended by the Court.  The response must address

specifically, and in the same order raised, each issue contained within the

objections by motion and order.  If the Court determines any objections are

without merit, it may rule without awaiting the response to the objections.

<table>
<tr><td></td><td>s/Michael Hluchaniuk</td></tr>
<tr><td>Date: February 10, 2009</td><td>Michael Hluchaniuk<br>United States Magistrate Judge</td></tr>
</table>

### CERTIFICATE OF SERVICE

I certify that on February 10, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Mikel E. Lupisella and William L. Woodard, AUSA.

s/Darlene Chubb
Judicial Assistant